IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MALACHY DeHENRE, #317415**                                                          **PETITIONER**

**v.**                                                                  **CAUSE NO. 1:13-cv-00478-KS-MTP**

**STATE OF MISSISSIPPI and**
**RONALD KING**                                                                     **RESPONDENTS**

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

This matter is before the Court on the Petition for Writ of Habeas Corpus [1] ("Petition") filed pursuant to 28 U.S.C. § 2254 by Malachy DeHenre ("Petitioner") on August 15, 2011. Petitioner is currently incarcerated by the State of Mississippi following a conviction of manslaughter on January 23, 2008. Petitioner was sentenced to 20 years in the custody of the Mississippi Department of Corrections on March 13, 2008. After considering the pleadings, the state court records, and relief sought by Petitioner, the Court has concluded that the Petition should be denied.

### II. BACKGROUND

Petitioner was charged with the murder of his ex-wife Dr. Nyasha DeHenre. On January 23, 1997, Jones County deputies found Nyasha in her home lying on the couch, a book on her stomach and her feet propped up, with a bullet in her head. She died a several days later.

Petitioner testified that Nyasha had been emotionally distraught and had committed suicide. According to his version of events, they were both seated in the same room, with him on the recliner and her on the love seat, where he reported that he kept a loaded gun hidden in

-1-

the recess. He noticed a flash of metal when he stood to adjust his pajamas and reflexively reached out to grab Nyasha's arm. Petitioner contends that the gun fired just as he pulled her arm. He then lay her down on the love seat and propped her legs up. He did not recall anything about a book. He then called Nyasha's mother before calling 911. While waiting for the ambulance, he went into the bedroom and changed clothes.

The State's experts classified Nyasha's death as a homicide and concluded that the gun was fired from at least eighteen inches away, with twenty-four or greater being the probable distance.

Petitioner's first trial in 1998 ended with the jury deadlocked with eleven members for acquittal and one for conviction. Petitioner was reindicted by a grand jury in December 2006, and he was put on trial once more in January 2008.

During the jury selection process of the second trial, in answer to a routine *voir dire* question, one juror replied, "Every man is entitled to a fair trial, but when DeHenre left here he became an abortionist." The defense immediately moved for a mistrial, but was denied by the trial court. The juror was promptly dismissed, and the trial judge admonished the remaining jurors to disregard the comment and repeatedly asked the entire panel if they could still be impartial after hearing the statement. Later, the panel was asked once more by the defense if they could put the comment aside. At all times, the prospective jurors responded that the comment would not affect their impartiality.

In pretrial motions, the defense moved to dismiss on the ground that certain pieces of physical evidence were unavailable, which the defense argued was because they were destroyed by the State. The trial court denied the motion and allowed the trial to proceed regardless of the

missing evidence.

At trial, the judge allowed the admission of testimony from Dr. B. R. Patel, a colleague and friend of Nyasha, as well as statements made by Petitioner's daughter to a 911 operator the night of Nyasha's death.

The jury ultimately found Petitioner guilty of manslaughter, and the trial court sentenced him to serve twenty years in prison and to pay a $10,000 fine. The Supreme Court of Mississippi upheld the conviction in a 5-4 decision.

Petitioner now seeks federal habeas relief from this Court pursuant to 28 U.S.C. § 2254.

### III.  STANDARD FOR HABEAS REVIEW

A writ of federal habeas corpus shall not be granted to a state prisoner on a claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . [or] that was based on an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254.

In order for relief to be granted, the applicant must have "exhausted his remedies available in the courts of the State" unless "there is an absence of available State corrective process" that would be effective in the applicant's case. 28 U.S.C. § 2254(b). A claim is presumed by have been adjudicated on the merits by the state court even if the state court's reasoning does not address federal law specifically. *Johnson v. Williams*, 133 S.Ct. 1088, 1094, 185 L.Ed.2d 105 (2013) (citing *Harrington v. Richter*, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011)). This presumption can be overcome only in limited circumstances. *Id.* at 1096.

Federal habeas relief cannot be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is contrary to federal precedent if it is "diametrically different" to clearly established Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision, then, would be contrary to federal precedent if it "confront[s] a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id.*

The Fifth Circuit has adopted Justice O'Connor's understanding of "unreasonable application" for purposes of habeas review, calling for an evaluation of whether the application was "objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (quoting *Williams*, 529 U.S. at 409, 120 S.Ct. 1495 (O'Connor, J., concurring)). Justice O'Connor elaborates this standard by saying that "[t]he federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did." *Williams*, 529 U.S. at 409-10, 120 S.Ct. 1495 (O'Connor, J., concurring). In sum, the application of federal law by a state court is considered reasonable as long as "fairminded jurists could disagree" on its correctness. *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). In reaching this determination, state courts are often granted more leeway when applying more general standards of federal law. *Yarborough*, 541 U.S. at 664, 124 S.Ct. 2140.

### IV. JURY BIAS FROM ABORTIONIST COMMENT

The first ground Petitioner argues is that the jury was biased against him due to the comment made during jury selection concerning his time as an abortionist.  Though the majority decision by the Mississippi Supreme Court does not address federal aspects of this claim explicitly, there is no doubt that it was adjudicated on its merits, as federal precedent is referenced indirectly in the majority opinion and directly in the dissent.

In its review for abuse of discretion, the majority opinion relies on *Evans v. State*, 725 So.2d 613 (Miss. 1998) (en banc), which has its foundation in *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).  *DeHenre v. State*, 43 So.3d 407, 411 (Miss. 2010) (en banc).  The Court in *Arizona* stated plainly that the trial judge is in the best position to evaluate the potential bias of a juror.  434 U.S. at 513-14, 98 S.Ct. 824.  This is further supported by the fact that the bias the majority seems to be looking at is actual bias, or "bias in fact," *United States v. Wood*, 299 123, 133, 57 S.Ct. 177, 81 L.Ed. 78 (1936), which the trial judge is best suited to determine.  *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (citing *Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).

The dissent in the Mississippi Supreme Court decision, in contrast, applies the reasoning found in cases dealing with pretrial publicity.  *DeHenre*, 43 So.3d at 420-23 (Dickinson, J., dissenting) (citing *United States v. Davis*, 583 F.2d 190 (5th Cir. 1978)).  These cases, stemming from *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), deal with implied bias, or "bias conclusively presumed as matter of law."  *Wood*, 299 U.S. at 133, 57 S.Ct. 177.

The question before the Court is whether the Mississippi Supreme Court's applications of these doctrines were unreasonable.  Because the Court finds that they were not, Petitioner cannot be granted a writ of habeas corpus on this ground.

**A.     Actual Bias**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . ."  U.S. Const. amend. VI.  However, "[i]mpartiality is not a technical conception," but a "state of mind" with "no particular tests and procedure" laid out by the Constitution for its determination.  *Irvin*, 366 U.S. at 724-25, 81 S.C.t 1639.  To rebut the presumption of juror impartiality, it is not sufficient to show only that a preconceived notion of guilt or innocence exists.  *Irvin*, 366 U.S. at 717, 81 S.Ct. 1639.  Rather, it must be shown that a juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000).  In evaluating whether members of the jury are in fact biased, there are "compelling institutional considerations" that favor deference to the trial judge who has observed the jurors and their reactions throughout the trial process.  *Arizona*, 434 U.S. at 513-14, 98 S.Ct. 824; *see also Wainwright*, 469 U.S. at 426-28, 105 S.Ct. 844.

In Petitioner's case, the trial judge observed the reaction the venire had to the potentially biasing comment and had the opportunity to ask questions during *voir dire* concerning the comment.  It is true that in *Davis*, as the dissent in the state supreme court decision points out, the Fifth Circuit held that the "cursory questioning" of the entire jury panel was not enough to expose the possibility of bias due to pretrial publicity.  *Id*. at 196.  Once the trial court knew of the existence of potentially prejudicial material, it "had a duty to inquire into the character" of such material.  *Id.* at 197 n.8 (quoting *United States v. Spinella*, 506 F.2d 426, 428 (5th Cir. 1975).  However, the trial court in this case already knew the exact character of the prejudicial comment and was able to gauge the reactions of the jurors accordingly.  The fact that the trial

judge questioned the entire panel on their ability to be impartial, rather than each individual member, does not drive the outcome of the Court's analysis because there is no constitutional requirement for individual *voir dire*.  See *Mu'Min v. Virginia*, 500 U.S. 415, 430-31, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991) (ruling that individual *voir dire* was not constitutionally required to determine jury bias in a case with pretrial publicity).  The trial judge was satisfied that the abortionist comment did not bias jury members, and the Supreme Court has held that such determinations are factual findings that should be given deference under § 2254(d).  *Wainwright*, 469 U.S. at 428, 105 S.Ct. 844 (citing *Patton*, 467 U.S. at 1038, 104 S.Ct. 2885).

Because the Petitioner has pointed to no proof that members of the jury were in fact biased against him, the Court cannot say that the Mississippi Supreme Court's application of federal law, which gives deference to the trial court's determination of actual bias, was unreasonable.

**B.     Implied Bias**

Even absent of proof that a jury member is actually biased, there exist "certain factual circumstances . . . in which no reasonable person could not be affected in his actions as a juror and in which the Constitution refuses to accept any assurances to the contrary."  *Brooks v. Dretke*, 444 F.3d 328, 331 (5th Cir. 2006).  This doctrine of implied bias has been held by the Fifth Circuit to be "clearly established Federal Law as determined by the Supreme Court."  *Id.* at 329 (citing *Smith v. Phillips*, 455 U.S. 209, 222, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring); *Remmer v. United States*, 350 U.S. 377, 381, 76 S.Ct. 425, 100 L.Ed. 435 (1956)).  The Supreme Court has confronted the doctrine of implied bias directly and indirectly when dealing with a multiple of issues.  *See, e.g., Smith*, 455 U.S. 209, 102 S.Ct. 940

(holding bias could not be imputed to juror applying for a job in the prosecutor's office); *Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d (1964) (per curiam) (granting habeas relief to a petitioner with successive trials, where the second jury was present for the reading of the first jury's verdict); *Irvin*, 366 U.S. 717, 81 S.Ct. 1639 (holding that pretrial publicity created a "huge wave of public passion" which made prejudice "manifest"); *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950) (ruling government employment did not impute bias to jurors in a case against a Communist). A finding of implied bias, by necessity, is very fact-specific. Analyses such as these are better understood as applications of a generalized standard rather than bright-line rules. *Williams*, 529 U.S. at 382, 120 S.Ct. 1495. Because the doctrine of implied bias is more general in nature, state courts are given more deference in its application under a federal habeas review. *Yarborough*, 541 U.S. at 664, 124 S.Ct. 2140.

    In Petitioner's case, it is difficult to say that the comment concerning his time performing abortions created such a high level of prejudice against him that no juror could possibly have been able to perform his duty without bias. The circumstances here are distinguishable from those in cases where the Supreme Court has imputed bias to the jury. Precedents dealing with pretrial publicity are easily distinguished. Those cases deal with prejudicial material in the form of publicity surrounding the case against the defendant and any preconceived notions of guilt concerning the charges currently being brought against him that the jurors have formed because of this publicity. *See, e.g., Irvin*, 366 U.S. 717, 81 S.Ct. 1639. Because the prejudicial material that Petitioner is arguing concerns non-criminal actions in his professional life rather the charges against him, the state court's refusal to extend these precedents to this case is not unreasonable.

*See White v. Woodall*, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014) (quoting *Yarborough*, 541 U.S. at 666, 124 S.Ct. 2140) ("'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'").

The Supreme Court has also imputed bias when, in successive trials of one defendant, members of the jury panel in the second trial were present as a guilty verdict was read by the jury in the first trial. *Leonard*, 378 U.S. at 544-45, 84 S.Ct. 1696. The prejudicing material in this case was an official verdict in a criminal trial given with the authority of the court behind it. *Id.* This is different from an out-of-turn comment given by a jury panel member such as in Petitioner's case. The substance of the statements differ as well. The verdict in the first trial in *Leonard* held the defendant guilty of forging and uttering endorsements on government checks, charges very closely related to the transportation of a forged instrument charge in the second trial. 378 U.S. at 544-45, 84 S.Ct. 1696. In contrast, the fact that Petitioner performed abortions, a practice that is not illegal, is not so easily associated with murder that having knowledge of it would make members of the jury incapable of being impartial.

The Court is cognizant of the controversial nature of abortion, but that nature, in and of itself, does not make any comment concerning it biasing as a matter of law. Because the comment in this case did not concern the charges against Petitioner and were not so closely related to the charges that bias must be imputed, it was not unreasonable under clearly established federal precedent for the state court to decline to impute jury bias in Petitioner's trial.

## IV. MISSING EVIDENCE

Petitioner's second ground for habeas relief deals with physical evidence not available at

Petitioner's second trial.  Petitioner argues that the State either lost or destroyed the gauze wrapped around the victim's wound, hair samples collected from the victim, and the nightgown the victim was wearing, and that this missing evidence would have exculpated him had it been available.  (*See* Rebuttal [14], pp. 11-13.)  The issue of the gauze was never presented at the state court level and is therefore not properly before the Court on habeas review.  *See* 28 U.S.C. § 2254(b)(1).  Because the exculpatory nature of the hair samples and nightgown is not certain and the evidence was not unavailable due to bad faith, the application of federal law by the state court was not unreasonable.

Under Supreme Court precedent, "the government is constitutionally required to preserve evidence that might be expected to play a significant role in the suspect's defense." *United States v. Binker*, 795 F.2d 1218, 1230 (5th Cir. 1986) (citing *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).  However, the Fifth Circuit has held that "the mere possibility the evidence might aid the defense does not satisfy the constitutional materiality standard." *Id.* (quoting *United States v. Webster*, 750 F.2d 307, 333 (5th Cir. 1984), *cert denied*, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985)).  The exculpatory value of the evidence must have been apparent before its destruction.  *Id.*

The Mississippi Supreme Court's application of this standard, while not explicitly referenced, was not unreasonable.  The exculpatory value of the hair samples depends on the area of the scalp the hair was taken, which is unknown.  Likewise, ruling the nightgown as possessing dubious exculpatory value was also not unreasonable.  The jury heard testimony concerning the locations of gunpowder residue on the nightgown and the poor condition of the nightgown when it was examined.  The conclusion that there is no proof that access to the

nightgown itself would have provided Petitioner with exculpatory evidence was not unreasonable.

The Supreme Court has held that failure to preserve evidence must have been "in good faith and in accord with . . . normal practices." *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (quoting *Killian v. United States*, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)). Petitioner presents no evidence of bad faith or of the State deviating from its normal practices with regards to the evidence in question. Therefore, it was not unreasonable for the state supreme court to find no bad faith in the State's failure to preserve the hair samples or the nightgown.

Because it was not unreasonable for the Mississippi Supreme Court to determine that the exculpatory value of the missing evidence was not high enough to make the evidence constitutionally material nor was it unreasonable to find that the unavailability of the evidence was in good faith, the Court cannot grant Petitioner a writ of habeas corpus on this ground.

## V.  VIOLATION OF DOCTOR-PATIENT PRIVILEGE

The third ground Petitioner argues entitles him to federal habeas relief is a violation of his doctor-patient privilege by the testimony of Dr. B. R. Patel. Under federal law, there is no doctor-patient privilege. *United States v. Moore*, 970 F.2d 48, 50 (5th Cir. 1992) (per curiam). As this is a matter of purely state law, the Court can only grant habeas relief if the state court's decision "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Petitioner's argument is that the Mississippi Supreme Court incorrectly applied Mississippi law. (*See* Rebuttal [14], at p. 15.) Since this argument does not touch upon the determination of facts, unreasonable or otherwise, the Court must deny the Petition on this ground.

## VI.  911 OPERATOR'S HEARSAY STATEMENTS

Petitioner contends he is eligible for federal habeas relief because the trial court improperly allowed Dora Morgan, the 911 operator, to testify to statements given to her by Petitioner's daughter.  The question of whether to admit hearsay statements is a matter of state evidentiary law, and federal habeas courts do not have the authority to grant relief based on misapplication of a state's evidentiary code.  *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[O]ur habeas powers [do not] allow us to reverse McGuire's conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code . . . .").  The only federal standard the state supreme court was required to consider was whether admission of the hearsay statement violated Petitioner's rights under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  Under *Richter*, we assume that, although the Mississippi Supreme Court did not discuss the *Crawford* precedent, they considered it and found the statement to not violate its standards.  *See Johnson*, 133 S.Ct. at 1094 (citing *Richter*, 131 S.Ct. at 784-85).

In *Crawford*, the Supreme Court held that the Confrontation Clause of the Sixth Amendment bars testimonial hearsay statements when the declarant is unavailable and there has been no opportunity for cross-examination.  541 U.S. at 68, 124 S.Ct. 1354.  The Court, though, declined to articulate a definite test to determine what made a statement testimonial or nontestimonial.  *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).  In *Davis*, though, the Court held that "[s]tatements are nontestimonial when made in the course of police investigation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id*.

Applying this standard to Petitioner's case, it was not unreasonable for the state court to consider the circumstances of the 911 call an "ongoing emergency" and subsequently find that the hearsay statements were nontestimonial in nature. Therefore, it was not unreasonable for the state supreme court to find that the hearsay statements of Petitioner's daughter did not violate *Crawford*.

Because *Crawford* could not be said to have been applied unreasonably by the state court, Petitioner is not entitled to federal habeas relief on this ground.

## VII.  UNRELIABLE EXPERT TESTIMONY

Petitioner's fifth alleged ground for federal habeas relief is the admission of unreliable expert testimony by the trial judge. Admissibility of expert testimony is a question of state evidentiary law. Federal habeas courts do not have the authority to grant relief based on misapplication of a state's evidentiary code. *See Estelle*, 502 U.S. at 72, 112 S.Ct. 475 ("[O]ur habeas powers [do not] allow us to reverse McGuire's conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code . . . ."). The Court, then, does not have the authority to grant Petitioner relief on this ground.

## VIII.  INEFFECTIVE ASSISTANCE OF COUNSEL

The sixth and final ground Petitioner purports entitles him to federal habeas relief is the ineffective assistance of his counsel at trial. This claim, though, was never presented before the state court. Federal habeas relief cannot be granted unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, the petitioner must "give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526

U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Because Petitioner has not given the state courts this opportunity, he has not exhausted his remedies in state court. Therefore, this claim is not properly before the Court, and relief cannot be granted on this ground.

### IX.  CONCLUSION

For the reasons discussed above, the Court rejects all the grounds for federal habeas relief found in the Petition for Writ of Habeas Corpus [1].

IT IS THEREFORE ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus [1] is denied.

SO ORDERED AND ADJUDGED this the 28th day of July, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE